1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEL-RED PARTNERS LLC,<br><br>                    Plaintiff(s),<br><br>        v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>                    Defendant(s). | CASE NO. 2:24-cv-01563-KKE<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR TO STRIKE |

Plaintiff Bel-Red Partners LLC ("Bel-Red") purchased property in 2019 and discovered in 2021 that the property had underground utility lines running underneath, after it was sued by a neighbor.  After Bel-Red settled that litigation, Bel-Red tendered a claim for coverage to its title insurer, Defendant First American Title Insurance Company ("First American").  First American denied the claim.

Bel-Red subsequently filed this action in King County Superior Court in August 2024, bringing claims for breach of contract and declaratory relief.  Dkt. No. 1-2.  First American removed the case to this Court in September 2024.  Dkt. No. 1.  Bel-Red amended its complaint in February 2025 to add a claim for insurance bad faith (Dkt. No. 27), and First American has filed a motion to dismiss the bad faith claim or, in the alternative, to strike certain portions of the amended complaint.  Dkt. No. 28.

1

2    For the reasons explained in this order, the Court finds that the amended complaint states

3 a valid claim for insurance bad faith, and that First American has not shown that any portions of

4 the amended complaint should be stricken.  Accordingly, the Court will deny First American's

5 motion.

6

## I.    BACKGROUND[1]

Bel-Red owns a parcel of real property located in Redmond, Washington (the "Bel-Red

Property").  Dkt. No. 27 ¶ 6.  Before purchasing the Bel-Red Property around May 2019, Bel-Red

opened escrow in connection to its purchase, and requested a preliminary commitment of title

insurance from First American.  *Id.*  Although First American provided a preliminary commitment,

Bel-Red subsequently discovered a number of errors in it.  *Id.* ¶ 7.  Nonetheless, on January 31,

2020, Bel-Red purchased the Bel-Red Property by a Statutory Warranty Deed and First American

issued the ALTA Owner's Policy of Title Insurance No. 959850(O) (the "Policy").  *Id.* ¶¶ 10–11.

The Policy included a "Covered Risks" provision that stated that First American "insures, as of

the Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against

loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by

reason of … [a]ny defect in or lien or encumbrance on the Title."  *Id.* ¶ 11.

Bel-Red planned to construct apartment homes, including an underground parking

structure, at the Bel-Red Property.  Dkt. No. 27 ¶ 13.  In June 2021, Y.L. Foundation, LLC

("Y.L.")—the owner of a parcel next to the Bel-Red Property (the "Y.L. Property")—filed a

complaint in King County Superior Court against Bel-Red, alleging that Bel-Red's planned

construction would interfere with its easement rights in the Bel-Red Property.  *Id.* ¶ 14; *id.* at 23.

In the course of that litigation, Bel-Red learned that utility lines ran underground from the public

---

[1] For purposes of a motion to dismiss, the Court assumes that the facts alleged in the operative complaint are true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

1   street to the Y.L. Property, via the Bel-Red Property.  *Id.* ¶ 15.  These utility lines were installed

2   decades before Bel-Red purchased the Property, and Bel-Red had no knowledge of these lines

3   until after the purchase.  *Id.*

4           Bel-Red ultimately settled with Y.L., and the action against Bel-Red was dismissed with

5   prejudice.  Dkt. No. 27 ¶ 16.  Bel-Red re-designed its apartment project and moved the utility lines

6   at "considerable expense."  *Id.*

7           Approximately two months after the settlement was reached, Bel-Red tendered a claim for

8   coverage to First American, summarizing its losses from the underground utility lines and the Y.L.

9   litigation.  Dkt. No. 27 ¶ 20; *id*. at 24.  On August 9, 2024, First American sent a coverage denial

10  letter to Bel-Red, stating that Bel-Red's claim tendering defense is not covered because "First

11  American's ability to resolve any covered matter and defend Bel-Red was prejudiced by Bel-Red's

12  untimely submission of this claim. Indeed, First American lost the opportunity to participate in the

13  litigation and the settlement of the … lawsuit."  *Id.* at 24.  First American also stated that even if

14  the claim had been timely submitted, the dispute over the easement agreement between Bel-Red

15  and Y.L. is excepted from coverage by Exceptions 18, 22, and 24 to Schedule B to the Policy, and

16  any allegations regarding Bel-Red's post-Policy plans for development are excluded from

17  coverage by Exclusions 3(a) and 3(d) to the Policy. *Id*. at 25.

18          A few weeks after the coverage denial letter was sent, Bel-Red filed suit against First

19  American in King County Superior Court.  Dkt. No. 1-2.  Bel-Red sought a declaratory judgment

20  finding that First American was obligated to defend Bel-Red in the Y.L. litigation and pay the

21  settlement thereof, and to indemnify Bel-Red for additional losses.  *Id*. ¶¶ 23–24.  Bel-Red also

22  asserted a claim for breach of contract, alleging that First American breached the Policy by refusing

23  to fund Bel-Red's defense, pay the settlement, or indemnify Bel-Red's covered damages.  *Id.* ¶¶

24  27–28.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR TO STRIKE - 3

1    First American removed the action to this Court, and thereafter responded to Bel-Red's

2    initial complaint, and asserted 15 affirmative defenses.  Dkt. Nos. 1, 19.  Bel-Red subsequently

3    amended the complaint and added a third cause of action for insurance bad faith.  Dkt. No. 27 ¶¶

4    39–43.  With respect to this new claim, Bel-Red alleges that First American acted in bad faith and

5    violated applicable Washington state insurance regulations, including the Insurance Fair Conduct

6    Act.  *Id.*  Bel-Red alleges that First American acted in bad faith by failing to timely investigate its

7    claim, denying coverage on terms not reported in its denial letter, and "attempting to backfill its

8    deficient investigation through the use of the discovery process in this case."  *Id.*  Bel-Red cites

9    First American's third affirmative defense specifically, arguing that First American "[r]aises

10    affirmative defenses to coverage that it did not raise in the coverage determination" which "is itself

11    a per se violation of WAC 284-30-380(1)."  *Id.* ¶ 31.

12    First American now moves to dismiss Bel-Red's insurance bad faith claim "to the extent

13    the claim purports to predicate [First American's] liability on [the third[2] affirmative defense] in its

14    Answer" and "discovery conducted by [First American] in this action."  Dkt. No. 28 at 1.

15    Alternatively, First American moves to strike specific allegations in the first amended complaint

16    ("FAC") that reference statements in its answer or litigation conduct.  *Id.* at 2.  First American's

17    motion is now ripe for resolution, and the Court will deny it for the following reasons.

18

19

20

21

---

22    [2] First American's motion acknowledges that Bel-Red's amended complaint references the third affirmative defense,
but it assumes that Bel-Red intended to reference the second affirmative defense.  Dkt. No. 28 at 6.  First American's
second affirmative defense reads: "The Complaint and the causes of action therein are barred, in whole or in part, by

23    the Conditions of the Policy, including but not limited to, Conditions 3, 5, 6, 7, 8, 9, 13 and 15."  Dkt. No. 19 at 5.
Bel-Red does not explicitly clarify in its opposition brief, but its arguments appear to be grounded in the second (not
third) affirmative defense.  *See* Dkt. No. 33 at 6.  Thus, the Court assumes that Bel-Red's bad faith claim is based on

24    First American's second, not third, affirmative defense.  *See* Dkt. No. 27 ¶ 30.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR TO STRIKE - 4

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To state a plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.   Motion to Strike

Federal Rule of Civil Procedure 12(f) allows courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Polaris PowerLED Techs., LLC v. Nintendo Co.*, 623 F. Supp. 3d 1132, 1136 (W.D. Wash. 2022) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).  "[W]hether to grant a motion to strike lies within the sound discretion of the district court" and "[i]n exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party[.]" *Alco*, 217 F. Supp. 2d. at 1033.

## III.   ANALYSIS

### A.   Litigation Privilege Does Not Apply Here.

First American moves to dismiss Bel-Red's bad faith claim, characterizing this claim as an "attempt to sue [First American] for statements it has made in its pleadings and for conducting discovery in this action[.]" Dkt. No. 28 at 2.  According to First American, Bel-Red's newly added

cause of action violates Washington's litigation privilege, and therefore, is improper as a matter of law. *Id.* at 2–3.

Generally, litigation privilege provides immunity from civil liability to witnesses, attorneys, and parties in a lawsuit based on statements made during litigation. *See Mason v. Mason*, 497 P.3d 431, 446–48 (Wash. Ct. App. 2021). Although First American claims that its actions taken during litigation—*i.e.*, asserting an affirmative defense or conducting discovery—cannot lead to liability, First American cites no authority where litigation privilege precluded an insured from asserting claims for insurance bad faith against their insurer. *See generally* Dkt. Nos. 28, 34.[3] Indeed, the opposite holds true: "Washington law recognizes that an insurer's duty of good faith continues after litigation begins, particularly where the claim remains open." *Wright v. State Farm Fire & Cas. Co.*, No. 2:23-cv-179, 2025 WL 794404, at *6 (W.D. Wash. Mar. 12, 2025) (citing *Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587RAJ, 2013 WL 153905, at *4 (W.D. Wash. Jan. 15, 2013)). "[V]iolation of that duty may give rise to a tort action for bad faith." *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, 747 F. App'x 513, 515 (9th Cir. 2018) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003)).

Moreover, Washington courts have declined to provide blanket privileges in insurance bad faith claims because doing so "would unreasonably obstruct discovery of meritorious claims and conceal unwarranted practices." *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 245 (Wash. 2013) (discussing application of attorney-client privilege to a claims file); *see also Hoff v. Safeco Ins. Co. of Ill.*, 449 P.3d 667, 674 (Wash. Ct. App. 2019) ("Typically, when an insured claims that

---

[3] First American cites several cases addressing the litigation privilege outside of the insurance context. *See* Dkt. No. 28 at 9–10 (citing, *e.g.*, *Deatherage v. Examining Bd. of Psych.*, 948 P.2d 828 (Wash. 1997) (professional disciplinary proceeding against psychologist arising from work performed as an expert witness); *Young v. Rayan*, 533 P.3d 123 (Wash. Ct. App. 2023) (claims arising from statements made in probate proceeding); *Scott v. Am. Express Nat'l Bank*, 514 P.3d 695 (Wash. Ct. App. 2022) (claims arising from collection action); *Mason v. Mason*, 497 P.3d 431 (Wash. Ct. App. 2021) (claims arising from conduct during dissolution proceedings)).

their insurer denied coverage, made unreasonably low offers, or delayed payment in bad faith, there is a presumption against allowing the insurer to claim attorney-client privilege or work product to prevent disclosure of claim processing communications and records.").

Therefore, the Court rejects First American's proposition that its litigation conduct or assertions are entitled to absolute privilege or immunity. *See* Dkt. No. 28 at 3. This type of blanket privilege is unsupported by Washington insurance law.

**B.  Bel-Red States a Plausible Claim for Insurance Bad Faith.**

First American contends that even if litigation privilege does not apply, Bel-Red has not sufficiently stated a claim for bad faith. Dkt. No. 28 at 12–13. The Court disagrees.

"Bad faith handling of an insurance claim is a tort analyzed applying the same principles as other torts: duty, breach of that duty, proximate cause, and damages." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1234 (W.D. Wash. 2008). As noted above, an insurer has a duty to act in good faith, and "[i]n order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). "Violation of Washington's insurance regulations constitutes evidence of bad faith." *Voorhees v. Esurance Ins. Servs., Inc.*, No. 2:23-cv-00420-RAJ, 2024 WL 3069977, at *6 (W.D. Wash. June 20, 2024) (cleaned up).

Here, Bel-Red sufficiently stated a claim for bad faith. Bel-Red alleges that First American violated Washington's insurance regulations because it did not complete its claim investigation in the time period required, and improperly asserted new reasons for the denial of coverage in this litigation, beyond those mentioned in its denial letter. Dkt. No. 27 ¶¶ 28–31. Bel-Red also alleges that First American is currently abusing the discovery process to support these improper bases for its coverage determination. *Id.* Drawing all reasonable inferences in Bel-Red's favor, as the Court must at this stage in the litigation, a jury could find that First American's pre- and/or post-litigation

conduct evinces bad faith.  The claim hinges on the reasonableness of First American's conduct, and whether an insurer acted reasonably is usually a question of fact reserved for the jury.  *Smith*, 78 P.3d at 1277.

This claim may fail at a later point in litigation, but at this point, Bel-Red's bad faith claim survives a motion to dismiss.  Accordingly, the Court will deny First American's motion to dismiss this claim.

**C.     The Court Denies First American's Motion to Strike.**

First American also moves in the alternative to strike portions of the FAC that reference or cite to its answer or conduct during litigation.  Dkt. No. 28 at 13.  In support of this motion, First American reiterates its arguments relating to litigation privilege.  *Id.* at 13–15, Dkt. No. 34 at 8–9.  Because the Court rejected these arguments in denying the Rule 12(b)(6) motion, it likewise denies First American's motion to strike.

## IV.   CONCLUSION

The Court DENIES First American's motion to dismiss and/or strike (Dkt. No. 28).  To the extent that the resolution of this motion impacts arguments made in the parties' pending summary judgment motions (Dkt. Nos. 37, 43), which were briefed during the pendency of this motion to dismiss, the parties may file supplemental briefs of no longer than three pages, no later than July 25, 2025, to provide any clarification.  The Clerk is directed to RE-NOTE those pending motions (Dkt. Nos. 37, 43) for July 25, 2025.

Dated this 11th day of July, 2025.

Kymberly K. Evanson
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR TO STRIKE - 8