UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEL-RED PARTNERS LLC, | CASE NO. 2:24-cv-01563-KKE |
| Plaintiff(s), | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Defendant(s). | |

Bel-Red Partners, LLC, filed this action against its title insurer, Defendant First American Title Insurance Company, after it denied Bel-Red's tender of claim for defense and indemnification related to litigation it had previously settled with a neighbor over an implied easement. Dkt. Nos. 1, 27. Bel-Red filed a motion for partial summary judgment, requesting that the Court find as a matter of law that the implied easement claim was covered by its First American title insurance policy ("the Policy"). Dkt. No. 37.[1] First American filed a cross-motion for summary judgment, requesting that the Court find that it is entitled to judgment as a matter of law on all or at least some of Bel-Red's claims. Dkt. No. 43.

Because the Court finds that there is no coverage for Bel-Red's claims under the Policy, the Court will deny Bel-Red's motion and grant First American's motion.

---

[1] This order refers to docket entries by CM/ECF page number.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

Bel-Red owns a parcel of real property located in Redmond, Washington (the "Bel-Red Property"). Dkt. No. 38 ¶ 2. Bel-Red purchased the Bel-Red Property on January 31, 2020, by a Statutory Warranty Deed and First American issued the ALTA Owner's Policy of Title Insurance No. 959850(O) (the "Policy"). *Id.* ¶ 3. The Policy included a "Covered Risks" provision that stated that First American "insures, as of the Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of … [a]ny defect in or lien or encumbrance on the Title." *Id.* at 7.

Bel-Red planned to construct apartment homes, including an underground parking structure, at the Bel-Red Property. Dkt. No. 38 ¶ 1. In June 2021, Y.L. Foundation, LLC ("Y.L.")—the owner of a parcel next to the Bel-Red Property (the "Y.L. Property")—filed a complaint in King County Superior Court against Bel-Red ("the Y.L. action"), alleging that Bel-Red's planned construction would interfere with its implied easement for underground utility lines running from the public street underneath the Bel-Red Property to the Y.L. property. *Id.* ¶ 4. During that litigation, Bel-Red learned that these utility lines had been installed decades before it purchased the Bel-Red Property, although Bel-Red had no knowledge of them until after purchasing the property. *Id.* ¶ 5. Bel-Red filed a lawsuit against Y.L. for trespass and ejectment ("the Bel-Red action"), and this lawsuit was consolidated with the Y.L. action. Dkt. No. 43-1 at 48–52, 89–91. In opposition to Bel-Red's motion for summary judgment in the consolidated case, Y.L. argued (for the first time) that it had an implied easement for the utility lines on the Bel-Red Property, as a defense to Bel-Red's trespass claim. Dkt. No. 43-1 at 111–25. Bel-Red and Y.L. ultimately settled both actions in May 2024. Dkt. No. 43-2 at 7–41. Bel-Red re-designed its apartment project and moved the utility lines at "considerable expense." Dkt. No. 38 ¶ 6.

In July 2024, approximately two months after the settlement was reached, Bel-Red tendered a claim for defense and indemnification to First American, summarizing its losses from the underground utility lines and the litigation with Y.L. Dkt. No. 43-2 at 55–58. On August 9, 2024, First American sent a coverage denial letter to Bel-Red, stating that Bel-Red's claim tendering defense is not covered because "First American's ability to resolve any covered matter and defend Bel-Red was prejudiced by Bel-Red's untimely submission of this claim. Indeed, First American lost the opportunity to participate in the litigation and the settlement of the … lawsuit." Dkt. No. 27 at 24. First American also stated that even if the claim had been timely submitted, the dispute in the Bel-Red action as to Y.L.'s implied easement is excepted from coverage by Exceptions 18, 22, and 24 to Schedule B to the Policy, and any allegations regarding Bel-Red's post-Policy plans for development and their interference with Y.L.'s easement rights are excluded from coverage by Exclusions 3(a) and 3(d) to the Policy. *Id*. at 25. First American's denial letter stated that if Bel-Red had timely submitted a tender of defense, "then the tender of defense to [Y.L.'s] alleged implied easement [] would have been covered by Covered Risk 2 to the Policy." Dkt. No. 39 at 8.

A few weeks after the coverage denial letter was sent, Bel-Red filed suit against First American in King County Superior Court. Dkt. No. 1-2. Bel-Red sought a declaratory judgment finding that First American was obligated to defend Bel-Red in its litigation with Y.L. and fund the settlement thereof, and to indemnify Bel-Red for additional losses. *Id*. ¶¶ 23–24. Bel-Red also asserted a claim for breach of contract, alleging that First American breached the Policy by refusing to fund Bel-Red's defense and settlement, or indemnify Bel-Red's covered damages. *Id*. ¶¶ 27–28.

First American removed the action to this Court, and thereafter responded to Bel-Red's initial complaint, and asserted 15 affirmative defenses. Dkt. Nos. 1, 19. Bel-Red subsequently

amended the complaint and added a third cause of action for insurance bad faith. Dkt. No. 27 ¶¶ 39–43. First American moved to dismiss Bel-Red's insurance bad faith claim or, in the alternative, to strike allegations in the first amended complaint ("FAC") that reference statements in its answer or litigation conduct. Dkt. No. 28. The Court eventually denied that motion (Dkt. No. 48), but while that motion was still pending, Bel-Red filed a motion for partial summary judgment and First American cross-moved for summary judgment. Dkt. Nos. 37, 43. After the Court denied the motion to dismiss, the Court ordered the parties to provide supplemental briefs addressing any impact of that ruling on their pending cross-motions, which they did. Dkt. Nos. 48, 49, 50. The Court heard oral argument on the cross-motions (Dkt. No. 59), which are now ripe for resolution.

## II.     ANALYSIS

### A.     Legal Standards

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

In Washington, insurance policies are "construed as contracts, and interpretation is a matter of law." *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1142 (Wash. 1984). If a policy's

language "is clear and unambiguous, [courts] must enforce it as written; [they] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).

> Determining whether coverage exists under a [comprehensive general liability] policy is a two-step process. The burden first falls on the insured to show its loss is within the scope of the policy's insured losses. If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language.

*Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (citing *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003–04 (Wash. 1992)). The rules applicable to determining coverage under a title insurance policy are the same as those applied to a general liability policy. *See, e.g.*, *Campbell v. Ticor Title Ins. Co.*, 209 P.3d 859, 861–62 (Wash. 2009).

"An insurer's duty to defend its insured arises where any allegation in the complaint, if proved true, would render the insurer liable under the policy." *Safeco Ins. Co. of Am. v. McGrath*, 708 P.2d 657, 659 (Wash. Ct. App. 1985) (citing *Emerson*, 687 P.2d at 1145). The duty to defend is broad, but "is not triggered by claims that clearly fall outside the policy." *Nat. Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013). This duty is broader than an insurer's duty to indemnify its insured, which "arises only where the injured party ultimately prevails on facts which fall within the policy coverage." *Safeco*, 708 P.2d at 659. Where, as here, tender is made after the conclusion of the underlying litigation, when there was no longer any claim to "defend," it is properly characterized as "seeking reimbursement for fees and costs incurred, rather than 'defense' of a claim." *Terhune Homes, Inc. v. Nationwide Mut. Ins. Co.*, 20 F. Supp. 3d 1074, 1079 n.2 (W.D. Wash. 2014).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 5

**B.     First American Owed No Duty to Defend or Indemnify Bel-Red Because the Policy Clearly Excludes Coverage for the Claims Tendered.**

Bel-Red's motion for partial summary judgment seeks a ruling from the Court that as a matter of law, Y.L.'s implied easement claim was covered by the Policy. Dkt. No. 37. It argues that whether First American could nonetheless deny coverage based on the prejudice of Bel-Red's late tender and a determination of Bel-Red's damages are separate issues not presented in its motion. *Id*. at 4.

First American opposes Bel-Red's motion, arguing that Y.L.'s implied easement claim as raised in the Bel-Red action or Y.L.'s claims brought in the Y.L. action are *not* covered by the Policy, "separate and apart from [the argument that First American] was also prejudiced by Bel-Red's late tender and violation of the no voluntary payment provision in the Policy." Dkt. No. 43 at 8.

In order to resolve the parties' cross-motions, and to determine whether First American owed Bel-Red a duty to defend or indemnify, the Court must determine whether the Policy reasonably covered the claims Bel-Red tendered. For the following reasons, the Court finds that both claims tendered are clearly excepted or excluded from coverage, and therefore First American's duty to defend or indemnify was not triggered.

> **1.     Claims Arising From Y.L.'s Complaint Are Excepted From the Policy's Coverage.[2]**

Y.L.'s complaint alleges that Bel-Red's proposed development would interfere with its reciprocal easement for ingress and egress through the existing parking lot on the Bel-Red Property to the parking lot on the Y.L. property, as well as for vehicular parking and pedestrian access to

---

[2] It appears that Bel-Red disclaims any coverage for this claim in this litigation (Dkt. No. 45 at 13 ("Put simply, the Reciprocal Easement for Access and Parking and Exception 24 do not form the basis for Bel-Red's claims against First American.")), but First American's arguments with respect to Y.L.'s complaint are nonetheless addressed here for the sake of completeness.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 6

seven parking stalls located on the Bel-Red Property. *See* Dkt. No. 43-1 at 26–32. Y.L.'s complaint alleges that this reciprocal easement results from an agreement between former owners of both the Y.L. property and the Bel-Red Property. *Id*. ¶¶ 4.3–4.4. Notably, Y.L.'s complaint does not reference a utility easement. *Id*. Indeed, Bel-Red admitted in an RFA response that the "Y.L. COMPLAINT only sought [to] adjudicate issues related to the RECIPROCAL EASEMENT FOR ACCESS AND PARKING[.]" Dkt. No. 43-3 at 59.

First American argues that the reciprocal easement was explicitly excepted from coverage by Exception 24 to the Policy. *See* Dkt. No. 43-1 at 23 (providing that the Policy "does not insure against loss or damage … that arise by reason of" the reciprocal easement). Bel-Red does not dispute the applicability of Exception 24 in its briefing. It therefore appears to be undisputed that that under Exception 24, the Policy does not cover Y.L.'s complaint. First American's duty to defend and indemnify was therefore not triggered by claims raised in Y.L.'s complaint.

**2. Coverage for Y.L.'s Implied Easement Claim is Excluded Under the Policy.**

The Court now turns to the heart of the dispute here: Y.L.'s implied easement claim. Y.L. raised the issue of an implied utility easement in response to Bel-Red's motion for summary judgment filed after the Y.L. action and Bel-Red action were consolidated. *See* Dkt. No. 43-1 at 111–25, Dkt. No. 43-2 at 57. Although no implied easement is referenced in the Y.L. complaint, which was the basis of Bel-Red's tender letter, First American's denial letter references the implied easement claim and notes that this claim would have been covered by the Policy's Covered Risk 2 (for any defect in or lien or encumbrance on the title) had it been "promptly" submitted to First American (as required by the Policy's Condition 3) before Bel-Red settled it (as prohibited by Condition 9(c)). Dkt. No. 39 at 6–8. But because it was not promptly submitted, and was in fact not submitted until after Bel-Red had already settled its litigation with Y.L., the coverage letter states that "coverage is denied" under Condition 3 as well as Condition 9(c). *Id*. at 8.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 7

Bel-Red's motion for summary judgment asks the Court to confirm what First American said in (one part of) its denial letter: that Y.L.'s implied easement claim would have been covered if Bel-Red's tender had been timely. Dkt. No. 37 at 11. It is Bel-Red's position that any prejudice that First American suffered as a result of Bel-Red's late tender does not automatically extinguish coverage completely, as provided by the terms of Condition 3:

> The Insured shall notify [First American] promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which [First American] may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If [First American] is prejudiced by the failure of the Insured Claimant to provide prompt notice, [First American's] liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

Dkt. No. 38 at 9. Bel-Red finds comfort in the fact that the existence of prejudice would only reduce, rather than eliminate, coverage, and thus argues that the Court should find now that coverage exists under the Policy and save the question of First American's prejudice for a future time. Dkt. No. 37 at 11.

Bel-Red also argues that although Condition 9(c) provides that First American "shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without" First American's "prior written consent" (Dkt. No. 38 at 11), coverage under the Policy is not extinguished under this condition without a showing of actual prejudice. Dkt. No. 37 at 12 (*citing Griffin v. Allstate Ins. Co.*, 29 P.3d 777 (Wash. Ct. App. 2001); *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020 (Wash. 1994)). Because Bel-Red urges the Court to stop short of finding prejudice as a matter of law, it argues that the Court should find

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 8

merely that Y.L.'s implied easement claim is covered under the Policy and save for another day whether coverage was extinguished by prejudice.³

First American disagrees, emphasizing that although the denial letter focuses on the timing of Bel-Red's tender (and cites that as a reason that coverage is denied), the letter *also* states that any claims based on an implied easement would be excluded from coverage under the Policy by Exclusion 3(d), as an encumbrance that did not attach until after the Policy's inception. Dkt. No. 43 at 19–21. The denial letter mentions this exclusion as an "additional" reason to exclude claims based on "Bel-Red's post-policy plans for development, including without limitation its alleged in[ter]ference with [Y.L.'s] easement rights[.]" Dkt. No. 39 at 7.

The Court agrees with First American that Y.L.'s implied easement attached after the Policy incepted, and is therefore excluded from coverage under Exclusion 3(d). Although Bel-Red emphasizes that the underground utility lines "within the Implied Easement were installed decades before Bel-Red purchased the Bel-Red Property and First American issued the Policy" (Dkt. No. 37 at 9–10), the installation date is not dispositive. First American has cited authority holding that an implied easement does not attach until a court issues a judgment establishing its existence. Dkt. No. 43 at 21–25 (citing *Easterling v. HAL Pac. Props., L.P.*, 522 P.3d 1258 (Idaho 2023); *Woodle v. Commonwealth Land Title Ins. Co.*, 844 N.W. 2d 806 (Nev. 2014); *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660 (Va. 1994)).⁴ Because no court has yet established the

---

³ Although Bel-Red contends that First American's citation to other conditions of the Policy in its second affirmative defense is inappropriate, it argues that even if these conditions can be invoked, they likewise preclude coverage only upon a showing of actual prejudice. Dkt. No. 37 at 13.

⁴ Since briefing was complete, the Idaho Supreme Court abrogated *Easterling v. HAL Pacific Properties*, finding that Idaho's general four-year statute of limitations does not apply to a claim of easement by necessity because an easement by necessity cannot be extinguished so long as the necessity exists. *Easterling v. Clark*, 574 P.3d 349, 364 (Idaho 2025). The second decision does not disturb the earlier finding that the right to an easement by necessity arises at the time of severance, but does not attach until it is judicially recognized, however. *See HAL Pacific Properties*, 522 P.3d at 1273 ("Only a court's judgment can transform the easement by necessity fiction into an enforceable property interest."). Because the *Easterling* decisions are focused on whether to apply a statute of limitations to actions seeking

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 9

existence of Y.L.'s implied easement, it is First American's position that the implied easement is excluded from Policy coverage under Exclusion 3(d).

Bel-Red cites Washington authority holding that an implied easement exists where two properties were previously owned by the same owner (as is true here), which support the proposition that an implied easement arises at the time that the common ownership is severed. *See Boyd v. Sunflower Props., LLC*, 389 P.3d 626, 631 (Wash. Ct. App. 2016) (addressing the "three essential predicates" needed to establish the existence of an implied easement); *Bryant v. Sandberg*, No. 35592-6-III, 2019 WL 6499442, at *2 (Wash. Ct. App. Dec. 3, 2019) ("An implied easement arises at the time of conveyance."). But again, when an implied easement *arises* is not dispositive here. The cases cited by Bel-Red do not address when an implied easement attaches and do not, moreover, address an implied easement in the title insurance context, as do *Woodle* and *Carstensen*.

Both *Woodle* and *Carstensen* address exclusions identical to Exclusion 3(d) and support First American's argument here. In *Carstensen*, the Virginia Supreme Court explained that "an easement by necessity legally arises at the time the servient estate is severed from the dominant estate, the easement may remain inchoate until established through judicial order or otherwise. An easement often is not judicially established or sought to be established for many years following the initial severance." 442 S.E.2d at 665. It therefore concluded that the policy's exclusion for encumbrances attaching or created subsequent to the policy's inception applied to easements by necessity established through judicial order entered after the policy's inception date. *Id*.

---

judicial recognition of an easement by necessity, the Idaho Supreme Court did not have reason to address when an easement by necessity attaches for purposes of title insurance, however. For that reason, the Court finds the reasoning of *Woodle* and *Carstensen* to be more applicable.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 10

Similarly, in *Woodle*, the Nebraska Supreme Court applied *Carstensen*'s reasoning to an implied easement in the context of an identical policy exclusion for encumbrances that attach or are created subsequent to the policy's inception date. 844 N.W. 2d at 813–14. The *Woodle* court concluded:

> We therefore conclude that for purposes of the policy of title insurance in question, the implied easements "attached" to Lot 2 at the time of the district court's decree which recognized their existence. Easements that are created or attach subsequent to the date of the policy are excluded. Because the implied easements remained inchoate, they did not attach to Lot 2 until they were legally recognized by the decree of the district court which was entered September 7, 2010. The date of the title insurance policy was December 31, 2008. Because the implied easements attached subsequent to issuance of the policy, the easements were excluded by the terms of the policy. As a matter of law, Commonwealth did not have a duty to defend or indemnify the Woodles.

*Id*. at 814.

Although *Woodle* and *Carstensen* are not binding on this Court, they are nonetheless persuasive and Bel-Red has not offered any basis on which they should be distinguished. Indeed, Bel-Red's former counsel cited *Woodle* and *Carstensen* to explain why Bel-Red did not tender the implied easement claim to First American earlier. *See* Dkt. No. 43-3 at 96–99. Because Exclusion 3(d) excludes coverage for an encumbrance such as an easement "attaching or created" subsequent to the Policy's inception (Dkt. No. 38 at 8), and Y.L.'s implied easement here attached subsequent to the Policy's inception, Exclusion 3(d) operates to exclude coverage for Y.L.'s implied easement claim.

As explained in this section, the exceptions and exclusions to the Policy operate to clearly preclude coverage of the claims Bel-Red tendered. Accordingly, First American's duty to defend or indemnify was not triggered and First American is entitled to judgment as a matter of law on those claims.

**C.    Bel-Red's IFCA/Bad Faith Claim Fails a Matter of Law. [5]**

**1.    Bel-Red Did Not Comply With IFCA's Notice Requirement.**

As noted above, Bel-Red amended its complaint to add a claim for violation of "*per se* bad faith" under Washington's Insurance Fair Conduct Act ("IFCA"). *See* Dkt. No. 27 ¶¶ 28–31. IFCA requires that no later than 20 days before an insured files an IFCA claim against its insurer, the insured must provide written notice of the claim to the insurer as well as the Office of the Insurance Commissioner. WASH. REV. CODE § 48.30.015(8)(a). It is undisputed that Bel-Red did not provide such notice to the Insurance Commissioner before amending its complaint to add an IFCA claim. *See* Dkt. No. 45 at 14 n.4.

Bel-Red contends that its failure to strictly comply with IFCA's notice provision should be excused because the claim was asserted after litigation had already started, and First American was well aware of Bel-Red's intent to add an IFCA claim due to correspondence between the parties months before the FAC was filed. *See* Dkt. No. 45 at 14–15. And according to Bel-Red, the only purpose of requiring notice to the Insurance Commissioner is to ensure that the insurer receives notice, which Bel-Red contends occurred in fact. *Id*. Moreover, Bel-Red notes that First American failed to address the notice issue in its affirmative defenses and argues that it should be precluded from asserting it now. *Id*.

Bel-Red's arguments are unpersuasive. Bel-Red cites no authority to support its assertion that the notice defense to the IFCA claim must be listed as an affirmative defense or it is waived, and there is authority indicating otherwise. *See, e.g.*, *Freeman v. State Farm Mut. Auto. Ins. Co.*, C11-761RAJ, 2012 WL 2891167, at *4 (W.D. Wash. July 16, 2012) (explaining that an affirmative

---

[5] The parties dispute to some degree whether Bel-Red's bad faith claim (Dkt. No. 27 at 9–10) is an IFCA claim or a bad faith claim. *See, e.g.*, Dkt. No. 43 at 27. This order does not resolve that dispute and instead explains that the FAC's third cause of action fails *either* as an IFCA claim or as a bad faith claim.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 12

defense may be raised for the first time in a motion for summary judgment so long as it does not prejudice the opposing party). Bel-Red has made no attempt to show that it is prejudiced by the timing of the raising of the notice defense.

Bel-Red also fails to cite any authority indicating that notice on the Insurance Commissioner is a superfluous requirement so long as the insurer has notice. Courts have required strict compliance with IFCA's notice provision, including in situations where an IFCA claim is added in an amended complaint. *See, e.g.*, *Becker v. TIG Ins. Co.*, 649 F. Supp. 3d 1065, 1083 (W.D. Wash. 2022); *Mason v. Am. Family Connect Prop. & Cas. Ins. Co.*, No. 2:24-cv-00643-BAT, 2024 WL 4202129, at *2 (W.D. Wash. Sep. 16, 2024) (citing *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 840 (W.D. Wash. 2014)); *Adamson v. Allstate Fire & Cas. Ins. Co.*, No. 3:23-cv-05186-TMC, 2023 WL 9094424, at *2 (W.D. Wash. Nov. 7, 2023).

Because "IFCA's pre-suit notice provision is a mandatory condition precedent to an IFCA lawsuit[,]" and it is undisputed that Bel-Red did not comply with this provision, the Court grants First American's motion for summary judgment on the IFCA claim. *MKB Constructors*, 49 F. Supp. 3d at 840.[6]

**2. The Bad Faith Claim Fails Because Bel-Red Has Not Shown That First American Unreasonably Investigated Its Claims.**

In Washington, "an insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003). "Whether an insurer acted in bad faith is a question of fact." *Id.* at 1277. "If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden

---

[6] Due to the resolution of the IFCA claim on this basis, the Court need not address the parties' dispute as to whether an IFCA claim can be (or was here) based entirely on alleged regulatory violations. Dkt. No. 43 at 30–31; Dkt. No. 45 at 15–18.

of proof." *Id.* "Accordingly, an insurer is entitled to … a dismissal on summary judgment of a policyholder's bad faith claim only if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or the insurance company is entitled to prevail as a matter of law on the facts construed most favorably to the nonmoving party." *Id.* "If rational minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate." *Traulsen v. Continental Divide Ins. Co.*, No. 82507-1-I, 2024 WL 3327023, at *20 (Wash. Ct. App. July 8, 2024) (citing *Smith*, 78 P.3d at 1277–78).

As explained above, the Policy does not cover the claims Bel-Red tendered to First American. First American could nonetheless be liable for bad faith under these circumstances if it failed to fully and fairly investigate Bel-Red's claims. *See Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998). But Bel-Red does not identify an investigation failure or any other unreasonable conduct on First American's part. It argues that First American unreasonably interpreted the Policy and the law to give itself the benefit of the doubt rather than its insured in denying coverage. Dkt. No. 45 at 18–19. But, as the Court has explained, the Court agrees with First American's interpretation of the law and Bel-Red has not cited to any evidence from which a reasonable fact-finder could find First American's conduct to be unreasonable. Accordingly, the Court will grant summary judgment on the bad faith claim to First American.

Because the Court has found that First American is entitled to judgment as a matter of law on Bel-Red's claims, the Court need not address the alternative arguments regarding damages. *See* Dkt. No. 43 at 33–40, Dkt. No. 45 at 19–22.

### III. CONCLUSION

For these reasons, the Court DENIES Bel-Red's motion (Dkt. No. 37) and GRANTS First American's cross-motion (Dkt. No. 43). The clerk shall enter judgment for First American.

Dated this 12th day of January, 2026.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge